**AFFIRMED; Opinion Filed August 1, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00253-CV

### ALLENBY, LLC AND HAYGOOD, LLC, Appellants
### V.
### CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH, Appellee

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-05965-M**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Brown
Opinion by Justice Myers

This case involves issues of res judicata and choice of law concerning an agreement to toll limitations. Allenby, LLC and Haygood, LLC appeal the summary judgment granted in favor of Credit Suisse AG, Cayman Islands Branch on their claims for breach of contract and promissory estoppel. Appellants bring four issues on appeal contending the trial court erred by granting Credit Suisse's motion for summary judgment and by denying appellants' motion for summary judgment. We affirm the trial court's judgment.

## BACKGROUND

Appellants were investors in credit agreements,[1] which were non-recourse real-estate loans put together by Credit Suisse. Appellants provided hundreds of millions of dollars to fund the loans. Because the loans were non-recourse, the value of the collateral as reflected in appraisals was important information in appellants' determination of the investment risk associated with each loan. According to appellants, the appraisals "grossly overstated the value of the underlying collateral," and when the borrowers defaulted, appellants lost hundreds of millions of dollars. Appellants maintained that Credit Suisse had the obligation to check the reasonableness of the appraisals of the collateral. Credit Suisse had claims against appellants for failing to settle their trades concerning commercial loans with Credit Suisse.

Before filing suit against one another, appellants and Credit Suisse engaged in settlement discussions. To keep their claims alive, the parties signed tolling agreements.[2] The first tolling agreement provided that time would not accrue for statute-of-limitations purposes between September 24, 2010 and January 24, 2011. The parties amended the first tolling agreement four times by extending the termination of the tolling period to a specific date. In September 2011, Credit Suisse's counsel contacted appellants' counsel and suggested that they sign a second tolling agreement providing that limitations would be tolled until a party gave thirty days' notice of intent to terminate the tolling agreement. Appellants agreed, and the parties signed the second tolling agreement, which contained language to that effect. The second tolling agreement included a promise that the parties would not include the tolling period in any assertion of a limitations defense.

---

[1] The actual investors in the credit agreements were numerous "Highland Funds," which assigned their rights under the credit agreements to appellants.

[2] The parties to the tolling agreement were Credit Suisse and "Highland Capital Management, L.P. and each of the Retail and Institutional funds listed on the attached Exhibit A." The record does not show which Highland Funds are members of appellants, but Credit Suisse does not dispute that the tolling agreement applied to appellants.

About two years later, appellants gave Credit Suisse notice of intent to terminate the tolling agreement, and after the thirty-day notice period expired, they filed suit in New York state court alleging claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, conspiracy, and unjust enrichment. Credit Suisse filed suit against appellants on its claims.

Credit Suisse obtained a judgment for over $50 million on its claims. Credit Suisse then amended its answer to appellants' complaint and asserted the defense of limitations on appellants' breach-of-contract claims. The same day, Credit Suisse filed its motion for summary judgment arguing that tolling agreements for an indefinite period for breach-of-contract claims are not enforceable under New York law.[3] The New York courts agreed that the parties' tolling agreement was not enforceable to prevent the running of limitations on appellants' breach-of-contract claims, and the court dismissed appellants' breach-of-contract claims that had accrued before July 25, 2006. *See Allenby, LLC v. Credit Suisse, AG*, 25 N.Y.S.3d 1, 3 (N.Y. App. Div. 2015); *see also* N.Y. GEN. OBLIG. § 17-103 (applies to "[a] promise to waive, to extend, or not to plead the statute of limitation applicable to an action arising out of a contract"); *Bayridge Air Rights, Inc. v. Blitman Constr. Corp.*, 599 N.E.2d 673, 674–75 (N.Y. 1992) (under GEN. OBLIG. § 17-103, indefinite tolling agreements are "ineffective to extend the limitations period" for breach-of-contract claims). In doing so, the New York courts determined "that the tolling agreement was governed by New York rather than Texas law" and "that equitable estoppel did not apply as a matter of law." *Id.* The New York courts held that certain of appellants' contract claims were filed within the limitations period, and although the New York trial court dismissed the fraud claims, the appellate division ordered appellants' fraud claims reinstated. *Id.* at 3–6.

---

[3] Credit Suisse's attorney explained that before appellants filed suit in New York, appellants had indicated their causes of action would be for fraud and other torts, for which the indefinite tolling agreement would have been enforceable. Appellants never disclosed to Credit Suisse that they intended to bring breach-of-contract claims. The attorney stated that Credit Suisse did not know appellants would bring breach-of-contract claims until they were served with appellants' complaint.

Appellants then filed this suit in Texas alleging Credit Suisse breached its promise in the tolling agreement not to include the tolling period in the calculation of whether limitations barred appellants' claims. Appellants also alleged promissory estoppel. Appellants sought to recover as damages the value of the claims dismissed in New York under the statute of limitations as well as the attorney's fees they incurred as a result of Credit Suisse's violation of the tolling agreement.[4] Credit Suisse moved for summary judgment on all of appellants' claims asserting they were barred by res judicata and that they would fail as a matter of law. Credit Suisse asked that they be dismissed with prejudice. Appellants moved for summary judgment and asked that the trial court render a partial summary judgment, ruling that the tolling agreement is governed by Texas law and that Credit Suisse breached the tolling agreement. The trial court signed an order granting Credit Suisse's motion for summary judgment and ordered that appellants take nothing on their claims. The trial court did not expressly rule on appellants' motion for summary judgment.

## SUMMARY JUDGMENT

Appellants' issues contend the trial court erred by granting Credit Suisse's motion for summary judgment. The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to

---

[4] Appellants pleaded their damages in their breach-of-contract cause of action as follows:

> As a direct and proximate consequence of Credit Suisse's breach of the Fifth Amended Tolling Agreement, Plaintiffs have suffered damages in that the Lenders' [i.e. plaintiffs'] Contract Claims prior to July 25, 2006, which stated losses of tens of millions of dollars and were otherwise legally upheld by Judge Ramos' [New York trial court judge] March 5, 2015 order, have been dismissed as time-barred in the Allenby Lawsuit, and Plaintiffs have expended substantial attorneys' fees in briefing and arguing Credit Suisse's bad-faith limitations defense in the Allenby Lawsuit as well prosecuting this claim in Texas. Plaintiffs, as the Lenders' assignees, seek monetary relief over $1,000,000, including compensatory and other damages in an amount to be proven at trial.

Appellants pleading for damages in their promissory estoppel cause of action is essentially the same.

judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

## RES JUDICATA

In their first issue, appellants contend the trial court erred by applying the doctrine of res judicata to bar appellants' causes of action in this case. The parties agree that the preclusive effect of a prior decision is determined by the law of the state that issued that decision—New York, in this case. *See Purcell v. Bellinger*, 940 S.W.2d 599, 601 (Tex. 1997) ("If the New York judgment is a valid, final judgment that would have had preclusive effect on this suit had it been brought in New York, then it bars this suit in Texas as well."). Therefore, the question is whether appellants' claims for breach of contract and promissory estoppel would be barred by res judicata if appellants had brought them in New York instead of Texas.

> Under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation. The rationale underlying this principle is that a party who has been given a full and fair opportunity to litigate a claim should not be allowed to do so again.

*In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005).

"The doctrine of res judicata operates to preclude the reconsideration of claims actually litigated and resolved in a prior proceeding, as well as claims for different relief against the same party which arise out of the same factual grouping or transaction, and which should have or

–5–

could have been resolved in the prior proceeding." *Schwarz v. Schwarz*, 2017 WL 1902379, at *2 (N.Y. App. Div. May 10, 2017). "Under New York's transactional approach to the doctrine of res judicata, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Id.* (quoting *Parolisi v. Slavin*, 950 N.Y.S.2d 140, 142 (N.Y. App. Div. 2012) (quoting *O'Brien v. Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981)). "New York does not have a compulsory counterclaim rule[;] a defendant who fails to assert a counterclaim is not barred by the doctrine of res judicata from subsequently commencing a new action on that claim unless the claim would impair the rights or interests established in the first action." *Wax ex rel. Wax v. 716 Realty, LLC*, 2017 WL 2562374, at *2 (N.Y. App. Div. June 14, 2017) (landlord's suits for possession of apartment and unpaid rent in which tenant sought rent abatement for bedbug infestation did not bar tenant's later suit against landlord for personal injuries from the bedbug infestation because tenant's success in second claim would not impair landlord's rights to possession of the property and judgment for unpaid rent established in the earlier suits).

In New York, res judicata precludes claims that have been dismissed under a statute of limitations from being litigated in a second suit arising from the same operative facts. *See Johnson v. City of New York*, 50 N.Y.S.3d 461, 462–63 (N.Y. App. Div. 2017) (suit alleging intentional tort dismissed on limitations; subsequent suit alleging negligence under same facts barred by res judicata); *see also Landau v. LaRossa, Mitchell & Ross*, 892 N.E.2d 380, 383 n.3 (N.Y. 2008) ("dismissal based on the statute of limitations . . . is equivalent to a determination on the merits for *res judicata* purposes" (quoting 10 WEINSTEIN, KORN, MILLER, N.Y. CIV. PRAC. ¶ 5011.11, at 50-116 (2nd ed.)).

Appellants' Texas claims fall into two categories: (1) those that require proof of liability and damages for the claims alleged in appellants' complaint in the New York litigation, and (2) those that seek only appellants' attorney's fees incurred for opposing Credit Suisse's assertion of the statute of limitations and for bringing this suit. We address each category in turn. As discussed below, we conclude (1) appellants' claims seeking to recover the same damages sought in the New York litigation are barred by res judicata; and (2) appellants' breach-of-contract claim seeking attorney's fees is not barred by res judicata, and (3) appellants' promissory estoppel claim seeking attorney's fees is barred by res judicata.

**Claims Involving the New York Litigation**

Appellants assert that res judicata does not bar their claims because their New York claims concerned Credit Suisse's breach of credit agreements by its use of appraisals it knew were inflated, while appellants' claims in this case involve breach of the tolling agreement and promissory estoppel from Credit Suisse's promise not to assert a limitations defense in the New York litigation. Credit Suisse argues that res judicata does bar appellants' claims because appellants seek to obtain in Texas the same damages from the same claims on which they sought recovery in New York.

This case is not one where a plaintiff is merely reasserting the same claims or using a new legal theory under the same facts. Nor is it one where the claims brought in different actions are legally unconnected. *See, e.g.*, *Murray, Hollander, Sullivan & Bass v. Hem Research, Inc.*, 489 N.Y.S. 2d 187, 190 (N.Y. App. Div. 1985) (state suit for nonpayment of billed attorney's fees was not barred by federal-court judgment on promissory note signed to settle claim for attorney's fees for different period). Instead, appellants assert Credit Suisse's liability is premised on their breach of the promises in the tolling agreement, which occurred years after the actions on which they based their New York claims. However, except for some

attorney's fees, the remedy appellants seek in this case is the same as it sought in the New York litigation and requires proof of the same facts they would have had to prove to recover damages in New York. As appellants state in their brief, they are "seeking to recover the value of the claims dismissed as time-barred in New York." To prove that "value," appellants would have to prove Credit Suisse's liability and their damages in the New York claims.

Thus, appellants' Texas claims seeking recovery under their New York claims constitute a case within a case. The only way appellants can prove their damages in this case is by proving the case they would have presented in New York. Allowing appellants to try their dismissed New York claims in Texas would impair the rights and interests established in Credit Suisse's favor in the New York litigation. Therefore, to this extent, appellants' claims in this case are alternative theories to recover the same relief as the New York claims. Applying New York's doctrine of res judicata, we conclude that appellants' claims are barred to the extent that appellants would have to prove Credit Suisse liable and recover damages under their New York claims.

Appellants argue that a case-within-a-case scenario like this one is not barred by res judicata in New York, citing *Gamer v. Ross*, 854 N.Y.S.2d 160 (App. Div. 2008). *Gamer* was a legal malpractice case where the plaintiffs retained the attorneys to sue a landowner and construction contractor when the plaintiffs' child was hurt by tripping over construction materials on the sidewalk. *Id.* at 161. The trial court granted the contractor's and property owner's motions for summary judgment and dismissed the plaintiffs' case against them. *Id.* The plaintiffs then sued their lawyers, asserting they were negligent for not conducting sufficient discovery that would have enabled the plaintiffs to prevail against the property owner's and contractor's motions for summary judgment. *Id.* at 161–62. The defendant lawyers moved for summary judgment asserting the plaintiffs' claim was barred by res judicata. *Id.* at 162. The

appellate division concluded the trial court properly denied the lawyers' motion for summary judgment because "the pretrial dismissal of the underlying actions did not constitute conclusive proof that those actions were without merit; it showed only that the plaintiffs were unable to raise triable issues of fact regarding the potential liability of the landowner and its contractor." *Id.* Thus, it appears the appellate division concluded the lawyers failed to meet the requirement that the earlier case be actually litigated. *See Schwarz*, 2017 WL 1902379, at *2. However, as discussed above, "dismissal based on the statute of limitations . . . is equivalent to a determination on the merits for *res judicata* purposes." *Landau*, 892 N.E.2d at 383 n.3. We conclude *Gamer* is not applicable to this case.

**Claims for Attorney's Fees**

Appellants also assert they have claims that do not require the same proof, seek the same damages, or arise from the same facts as the New York litigation, namely, their claims for breach of contract and promissory estoppel arising from Credit Suisse's assertion of the statute of limitations when it expressly represented in the tolling agreement it would not do so. In these claims, appellants pleaded that they seek their attorney's fees for opposing Credit Suisse's assertion of limitations in the New York litigation and for bringing this suit to enforce the tolling agreement and Credit Suisse's representations under the agreement.

*Breach of Contract*

Appellants did not bring a breach-of-contract claim based on Credit Suisse's alleged breach of the tolling agreement in the New York litigation, and Credit Suisse did not argue in its motion for summary judgment that appellants could have done so. Therefore, appellants' breach-of-contract claim seeking as damages their attorney's fees for opposing Credit Suisse's limitations defense is not barred by res judicata.

*Promissory Estoppel*

Next, we must determine whether appellants' promissory-estoppel claim seeking attorney's fees as damages is barred by res judicata. Credit Suisse asserts the claim is barred by res judicata because it arises from the same facts the parties litigated in appellants' equitable-estoppel defense to Credit Suisse's assertion of the statute of limitations.

In their equitable-estoppel defense to Credit Suisse's limitations defense in the New York litigation, appellants asserted paragraph 4(b) of New York's General Obligation Law § 17-103 permitted the trial court "to find that by reason of conduct of the party to be charged it is inequitable to permit him to interpose the defense of the statute of limitation." N.Y. GEN. OBLIG. § 17-103(4)(b); *see also Robinson v. City of New York*, 265 N.Y.S.2d 566, 569–70 (N.Y. App. Div. 1965) ("where the agreement, representations or conduct of a defendant have caused a plaintiff to delay suit on a known cause of action until the statute of limitations has run, the courts will apply the doctrine of estoppel to prevent an inequitable use by the defendant of the statute as a defense"). Appellants then asserted that their "reliance on the agreement, representations, and conduct of Credit Suisse all give rise to equitable estoppel." Appellants stated they refrained from filing suit based on the terms of the second tolling agreement, which was drafted by Credit Suisse. They also stated "[t]he agreement allowed Credit Suisse time to try to negotiate a settlement." They pointed out that Credit Suisse expressly covenanted in the agreement that it would not include the tolling period from the tolling agreement in any assertion that appellants' claims were barred by limitations.

In its promissory-estoppel claim in this case, appellants state that the parties signed the tolling agreement "memorializing Credit Suisse's covenant to not assert a limitations defense inclusive of dates within the defined Tolling Period." They stated that "the very purpose" of the tolling agreement was to delay the filing of the parties' claims "in order to facilitate continued

–10–

settlement discussions between the parties." Appellants then allege they withheld filing suit for two years in reliance on Credit Suisse's covenant in the tolling agreement.

Appellants' promissory estoppel claim in this case arises out of the same transaction as its equitable estoppel defense in the New York litigation. The trial court in New York ruled on the promissory estoppel claim, finding appellants "fail[ed] to allege any inducement or misrepresentation by Credit Suisse that would warrant equitable estoppel." *Allenby*, 2015 WL 1442370, at *2. Therefore, the promissory estoppel claim is barred by New York's application of the doctrine of res judicata.

**Conclusion**

We conclude that appellants' breach-of-contract cause of action for the value of its claims in the New York litigation is barred by res judicata, but appellants' breach-of-contract claim seeking its attorney's fees is not barred by res judicata. We further conclude that appellants' claim for promissory estoppel is barred in its entirety by res judicata.

We sustain appellants' first issue in part and overrule it in part.

**CHOICE OF LAW**

Having determined that part of appellants' breach-of-contract claim survived Credit Suisse's assertion of res judicata, we next consider appellants' second issue, which contends that Texas law instead of New York law should apply to the tolling agreement, which would make the agreement enforceable in this lawsuit. A trial court's determination of choice of law is a question of law and is reviewed de novo. *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 398 (Tex. App.—Dallas 2009, pet. denied).

Credit Suisse asserts that collateral estoppel bars the Texas courts from considering the choice-of-law question because the New York courts determined that New York law, and not Texas law, applied to the tolling agreement. We disagree. In New York, collateral estoppel does

–11–

not bar the relitigation of pure questions of law, and choice of law is a pure question of law. *See Sterling Nat'l Bank v. E. Shipping Worldwide, Inc.*, 826 N.Y.S.2d 235, 237 (N.Y. App. Div. 2006); *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d at 398.

When the parties' agreement does not include a choice-of-law provision, we look to section 188 and section 6 of the Restatement (Second) of Conflict of Laws to determine which law applies. *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008).

Section 188 provides,

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties . . . , the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied . . . .

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (AM. LAW INST. 1971).

Section 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

*Id.* § 6.

### Analysis

Under section 188, we must determine whether Texas or New York had the more significant relationship to the transaction, *i.e.*, the tolling agreement. Appellants argue the section-188 contacts point equally to both New York and Texas, while Credit Suisse argues the contacts clearly point to New York.

The place of negotiation was both Texas and New York. The negotiations for the second tolling agreement were conducted between appellants' attorney in Austin and Credit Suisse's attorney in New York.

The place of contracting "is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect, assuming, hypothetically, that the local law of the state where the act occurred rendered the contract binding." RESTATEMENT § 188 cmt. e. Appellants assert that its counsel's oral assent to Credit Suisse's oral offer to toll limitations until thirty days after either party gave notice was the last action necessary to give the tolling agreement binding effect. We disagree. Appellants' suit is not for breach of an oral agreement. As appellants state in their petition, "This action stems from

Credit Suisse's calculated breach of a *written* tolling agreement." (Emphasis added.) Credit Suisse presented evidence that appellants' lawyer signed the written agreement first and then Credit Suisse's lawyer signed the agreement in New York. We conclude the place of contracting was New York.

The place of performance was both New York and Texas. The tolling agreement required the notices be sent to appellants' counsel in Texas and to Credit Suisse's counsel in New York and Texas. However, the purpose of the tolling agreements was to toll limitations on the parties' claims concerning the credit agreements. Appellants alleged in their complaint in the New York litigation that the credit agreements stated that "exclusive jurisdiction" for any claim arising out of the credit agreements was in the courts of the State of New York. Appellants filed their action for breach of the credit agreements in New York.[5] Therefore, performance of the tolling agreement required that the parties not assert limitations in the New York litigation. Also, according to appellants, Credit Suisse breached the tolling agreement by asserting limitations in the New York litigation. Thus, the primary place of performance was New York. This factor strongly favors New York as the choice of law.

Concerning "the domicil, residence, nationality, place of incorporation and place of business of the parties," appellants are Delaware limited liability companies. Allenby is a citizen of both New York and Texas, and Haygood is a citizen of Texas and Delaware. The principal place of business of appellants' members is Texas. Credit Suisse is a Swiss corporation, and its

---

[5] Appellants assert that the lawsuits were filed in Texas as well as New York. Appellants attached to their summary judgment response a petition filed in Texas by Claymore Holdings, LLC against Credit Suisse. Claymore Holdings, like appellants, was an assignee of the claims of various Highland Funds against Credit Suisse on credit agreements. However, the record does not show that the Highland Funds that were parties to the tolling agreement were the same Highland Funds that were members of Claymore Holdings. Appellants attached the trial court's findings of fact and conclusions of law in the Claymore lawsuit to their motion for summary judgment. The trial court in the Claymore suit found the plaintiffs entered into tolling agreements, including one in September 2011, that would toll limitations until 30 days after either party provided written notice of the tolling agreement. However, nothing in the record shows that the tolling agreement in the Claymore lawsuit is the same agreement as in this lawsuit. Therefore, we do not consider the filing of the Claymore Holdings suit in Texas to constitute performance under the tolling agreement.

–14–

principal place of business is either Switzerland or the Cayman Islands. This factor points more to Texas than to New York.

Appellants assert that section 6's public-interest factors weigh heavily in favor of Texas law, while Credit Suisse maintains the factors overwhelmingly point to New York. The Texas Supreme Court, quoting the Restatement, has deemed one of the factors to be the most significant in contract cases:

> "Protection of the justified expectations of the parties is the basic policy underlying the field of contracts." . . . Accordingly, the parties' expectations as stated in their contract should not be frustrated by applying a state law that would invalidate the contract, at least not unless those expectations are substantially outweighed by the interests of the state with the invalidating rule."

*Sonat Expl. Co.*, 271 S.W.3d at 234–35 (quoting RESTATEMENT § 6 cmt. b). However, the supreme court also stated, "contracts should be governed by the law the parties had in mind when the contract was made."

The parties' expectations were that the tolling agreement would apply to their claims involving the credit agreements, which could be brought only in New York. Appellants alleged in their New York suit that the credit agreements stated the New York courts had exclusive jurisdiction "'in any action arising or proceeding arising [sic] out of or relating to' the credit agreements." The tolling agreement applied only to the claims brought in the New York litigation. Under these circumstances, we cannot say the parties' justified expectations would be frustrated by the application of New York law to the tolling agreement.

Appellants argue that the application of New York law to the tolling agreement frustrated the parties' justified expectations because it invalidated appellants' claims. We disagree. Credit Suisse presented evidence that when it suggested an indefinite tolling agreement to appellants, Credit Suisse believed that appellants' claims sounded in tort, not contract, because every mention appellants had made of their potential claims was that they were for fraud or other torts.

–15–

Credit Suisse's attorney, David Lender, stated in an affidavit that just before appellants filed suit, appellants' attorney contacted him and said one of the attorneys' associates had come up with a new theory and that Lender would see it in the complaint. Thus, the justified expectations of the parties when they signed the tolling agreement were that appellants' claims, which at that time consisted only of tort claims, would be tolled by the tolling agreement. Those expectations were met, and limitations did not bar appellants' claims for fraud, aiding and abetting fraud, and civil conspiracy. *Allenby*, 25 N.Y.S.3d at 4-6. Appellants did not present any evidence that, when they signed the tolling agreement, they expected to have breach-of-contract claims tolled.

Appellants also argue that "application of Texas law here is not 'substantially outweighed' by the interest of New York—a state with an equal or lesser relationship to the transaction and the parties—so as to warrant eviscerating the parties contractual expectations." (Quoting RESTATEMENT § 188 cmt. b.). However, as discussed above, Texas does not have an equal or greater relationship to the transaction. Texas's only relationship to the transaction is that appellants' offices are in Texas, some negotiation of the tolling agreement occurred in Texas, and appellants signed the tolling agreement in Texas. New York, however, was the state with exclusive jurisdiction over the claims for which the parties wanted to toll limitations, performance of the tolling agreement was primarily in New York by the parties not asserting limitations, and breach of the agreement occurred in New York when Credit Suisse filed its motion for summary judgment asserting limitations. Considering these facts, we conclude that New York's interests substantially outweigh those of Texas. Furthermore, as discussed above, the parties' "contractual expectations" were that limitations for appellants' tort claims would be tolled, and those expectations were met. The transaction, that is, the tolling agreement, is associated with the parties' claims, which as appellants stated in their New York complaint, are subject to the exclusive jurisdiction of the New York courts.

Appellants also assert that section 200 of the Restatement requires applying Texas law instead of New York law. Section 200 provides: "The validity of a contract, in respects other than capacity and formalities, is determined by the law selected by application of the rules of §§ 187–188." RESTATEMENT § 200. Appellants then quote from comment c, which states in part, "when the state with the invalidating law has the greater interest in the determination of the particular issue, the validating law of a state with a lesser, but nevertheless substantial, interest should be applied if the local law rules of the two states differ only in matters of detail." *Id.* cmt. c. New York's invalidation of indefinite tolling agreements is more than a mere "matter[] of detail"; it is a matter of public policy. *See Bayridge Air Rights*, 599 N.E.2d at 675; *see also Allenby, LLC v. Credit Suisse, AG*, 15 N.Y.S.3d 710, 2015 WL 1442370, at \*2 (N.Y. Sup. Ct. Mar. 3, 2015); *Kramer Levin Naftalis & Frankel, LLP v. Metropolitan 919 3rd Ave., LLC*, 791 N.Y.S.2d 318, 323 (N.Y. Sup. Ct. 2004). We conclude that Restatement section 200 does not require application of Texas law.

Considering the facts that the tolling agreement was performed and breached in New York and concerned claims that the parties had agreed could be brought only in New York, and Texas was merely the state where the parties on one side had their principal place of business and from where they negotiated and signed the tolling agreement, we conclude that New York has the more significant relationship to the transaction. We conclude that New York law, and not Texas law, should be applied to the tolling agreement. Under New York law, the agreement is unenforceable. Therefore, the trial court did not err by granting Credit Suisse's motion for summary judgment on appellants' breach-of-contract claim. We overrule appellants' second issue.[6]

---

[6] Because of our rulings on appellants' first and second issues, we need not discuss their third and fourth issues.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/

160253F.P05

LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALLENBY, LLC AND HAYGOOD, LLC,
Appellants

No. 05-16-00253-CV      V.

CREDIT SUISSE AG, CAYMAN
ISLANDS BRANCH, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-05965-M.
Opinion delivered by Justice Myers. Justices
Bridges and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH recover its costs of this appeal from appellants ALLENBY, LLC AND HAYGOOD, LLC.

Judgment entered this 1st day of August, 2017.